## (June 29, 1967)

■ IROQUOIS GAS CORPORATION, Respondent, v. DANIEL R. GERNATT et al., Doing Business as DAN GERNATT FARMS, Appellants Memorandum: The judgment of condemnation permits plaintiff Iroquois Gas Corporation to condemn certain gas storage space underneath respondents' farm pursuant to article 3-A of the Conservation Law. Article 3-A of the Conservation Law enacted October 1, 1963, provides a comprehensive scheme for regulation of production, distribution and storage of gas and oil in the State of New York comprising sections 70-97 of the Conservation Law. Section 85 provides for and regulates the storage of gas. In order to be permitted to store gas in an underground reservoir the operator must: 1. Obtain the approval of the State Geologist. 2. Make application to the Department of Conservation for an underground storage permit. 3. Attach to the application a map showing the location and boundaries of the proposed storage reservoir. 4. Include a report containing sufficient facts showing the adaptability of the reservoir for storage purposes. 5. Enclose a signed affidavit by the prospective operator averring that the operator has acquired a lease or rights to at least 75% of the surface area over the storage reservoir and including an agreement that the prospective operator will within a reasonable time either acquire the remaining 25% of the surface land area over the reservoir by negotiations or condemnation proceedings. Subdivision 3 of section 85 provides: ".This section shall not apply to underground storage reservoirs or the storage of gas therein provided that such reservoirs have been placed in operation prior to October first, nineteen hundred sixty-three and so long as such operation is not abandoned." Section 86 is the authorization for the instant condemnation proceedings. Subdivision 1 provides: "Any corporation empowered to produce, transport, distribute or store gas within this state for ultimate public use, which holds an underground storage permit from the department as hereinbefore provided or which is otherwise lawfully operating an underground storage reservoir, and which after reasonable effort is unable to obtain rights in real property and wells thereon necessary for activation, operation, or protection of the storage reservoir shall, subject to the condemnation law of this state, have the authority to acquire such rights by condemnation, as may be required adequately to examine, prepare, maintain, operate and protect, and for access to such underground storage reservoir." It would appear clear that when section 86 refers to a corporation which is otherwise

lawfully operating an underground storage reservoir it means one operating such a reservoir prior to October 1, 1963 which has not been abandoned prior to the date of condemnation. Subdivision 3 of section 85 states the requirement for a permit has no application to those gas companies operating a storage reservoir prior to October 1, 1963. It makes no mention of those lawfully operating. The size and dimension of these underground pools or reservoirs are not known with certainty as is evidenced by the case law and the statute itself. Subdivision 4 of section 85 states that every underground storage operator shall file a report each year showing any change in the estimated size or shape of the reservoir and its capacity, the maximum average wellhead shut-in pressure and the number of strata being utilized for gas storage. Plaintiff according to the affidavit of its senior vice president has been operating the underground gas storage reservoir known as the Quaker Pool since October 27, 1948. According to a former engineer of plaintiff, one Henry L. Steadman, the depth and boundary of an underground storage reservoir is determined by well records in the storage area. The location of such wells in the Quaker Pool is shown on a map attached to Steadman's affidavit. The fact that the Quaker Pool extended under defendant's property was not ascertainable until plaintiff sunk its well and it was observed that its shut-in wellhead pressure almost doubled from 1956 when it was originally sunk. Such a well unconnected to an outside source of gas could not have increased its shut-in wellhead pressure. Given the difficulty and uncertainties attendant upon locating the dimensions and boundary of an underground reservoir or gas pool it is highly unlikely the Legislature intended to render a pre-1963 storage operation unlawful for condemnation purposes should it be discovered the pool extended into nonleased lands. We conclude that Iroquois was lawfully operating an underground reservoir within the meaning of subdivision 1 of section 86 and has standing to bring the instant condemnation proceedings to condemn the storage area under defendants' land and cap the well thereon, and affirm the judgment of condemnation. All concur, except Goldman, J., who dissents and votes to reverse the judgment and dismiss the petition, in the following Memorandum: In order to succeed petitioner must either hold an underground storage permit or be "otherwise lawfully operating an underground storage reservoir" (Conservation Law, § 86). It is conceded that petitioner does not possess a permit but alleges that it is lawfully operating a reservoir. Defendants deny this allegation and assert that petitioner's gas injections have been in violation of their rights. There is no affirmative statement by petitioner that it obtained leases from the landowners under whose land it injected gas and we must assume that it has no leases. Defendants urge that petitioner's activity over the years in injecting gas under their land was and is an unlawful trespass and disqualifies petitioner from seeking condemnation under the statute. With this position I agree. To accept petitioner's argument that it is entitled to use the condemnation power because it has neither permit nor lease would render the words in the statute "lawfully operating" nugatory. In short, petitioner is a trespasser and cannot avail itself of the condemnation power. In *Hammonds* v. *Central Ky. Natural Gas Co.* (255 Ky. 685), an action for trespass by the landowner who had never given a lease, the court held that there was no right of action, for the defendant had no title to the gas it had injected and the plaintiff could extract the gas freely. The implication of this decision is clear — if the defendant gas company had retained title, it would be a trespasser. In *White* v. *New York State Natural Gas Corp.* (190 F. Supp. 342) and *Lone Star Gas Co.* v. *Murchison* (353 S. W. 2d 870 [Tex. Civ. Appeals]) the courts held that the injecting company does not lose title.

Again the implication seems clear to me — if the gas company retains title, it, a fortiori, commits a trespass. (See, 94 A. L. R. 2d 529, 543.) I would reverse the judgment and dismiss the petition on this ground alone and, therefore, do not reach the other points urged by appellants. (Appeal from judgment of Erie Special Term in a condemnation proceeding.) Present — Bastow, J. P., Goldman, Henry, Del Vecchio and Marsh, JJ. [50 Misc 2d 1028.]